2-17-0328. People of the state of Illinois plaintiff, Anthony, will be acting in court against the defendant. Everyone while we have the defendant in court, Mr. Fletcher, please come. Everyone while we have the plaintiff, Anthony, please come. Alright, Mr. Hammond. Good morning, Your Honors. Good morning. My name is Fletcher Hammond. I represent the defendant, Dr. Patrick Wilber. May it please the Court. I'm going to pick your microphone up just a tad. Sure. Thank you. Your Honors, in this case, I'm asking this Court to issue two new rules of law. One that significantly limits the trial judge's ability to render a directive verdict in a fitness proceeding, or alternatively, a rule that significantly limits the trial counsel's ability to argue against her client's wishes in the same fitness proceeding. And the reason this Court should create these two new rules of law is because without these limitations, many fitness proceedings, including the one in this case, devolve into shams. The defendant in this case demanded that his fitness be determined by a jury, as is his statutory right. But that right was not respected. Because the State bore the burden of proving that the defendant was not fit, or was fit, and because the State had no desire to prove that the defendant was fit, the State rested without proving really any evidence in favor of the proposition that the defendant was fit. Well, what if they can't provide evidence that the defendant is fit? Because, I mean, how many doctors must they call? Well, if you can't – and that's why the rule that I'm asking this Court to adopt is essentially the same – that the Supreme Court has been using when it reviews directive verdicts and having the trial judge use it. And essentially what it is is the trial judge has to look at the record beyond what the State has produced and look at the record and ask whether he can affirmatively state there is no other evidence that the State is ignoring. And that's how the Supreme Court handled it in Brown, in Speck, and even in Holt. Well, let's assume that – all right, the trial court has heard the evidence of our Dr. Oron, and he's observed – you know, the trial court has also observed the defendant and has seen some of the conduct that brings the issue to the Court's attention. What should he do or what should he have done at that particular point in time? Well, it depends on what he's seen. In this case, you know, there's already Holt out there. And if this case becomes Holt, where the record – not just what the State produced at the hearing, but also the defendant's pro se filings being completely incoherent and the defendant's conduct during the hearing and other hearings during the case, all that – you know, the Supreme Court ultimately found that the entire record clearly indicated the defendant was not fit and only indicated the defendant was not fit. It's actually overwhelming evidence. If it's that, then the judge can grant the directive verdict. If it's anything short of that, like this case, where you do have one doctor saying the defendant's not fit, but you have lots of things on the record that could have been used to challenge your opinion, but nobody bothered to do it because nobody in the trial court had any interest in meeting that verdict, then the judge should deny the directive verdict. Well, what other things could – in this case? Let's don't talk about other cases because this is the one here. Sure. But we'll do that by comparison later. What could the judge have looked at here? In this case, the judge could have looked at Dr. Howard's report. He could have looked at the defendant's pro se filings. Did he look at the report? The report was admitted. Okay. It wasn't – I don't think he could. I don't know where he wrote that during that hearing. You know, the entire hearing is 13 pages of transcript. There's no pause for him to look at it. But she testified. That can testify, yes. So the opportunity to do it during the testimony was there, obviously. Sure. Again, her testimony is a 13-page transcript. It's not – and I don't remember at what point during the testimony the report was admitted. But he could also look at the defendant's pro se filings. The report itself contained evidence that calmly questioned some of Dr. Howard's opinions. For example, she testified that the defendant had trouble describing to her the charges that he was charged with. And if you look at her report with the defendant, she had a quote from the defendant in her report. And what the defendant said to her was the charge was the cop called it disorderly conduct, but the prosecutor calls it electronic harassment, which is exactly correct. The officer in this case filed a complaint charging him with disorderly conduct. It was superseded by an information charging him with electronic harassment. So he gave her the correct answer, yet she used that as evidence of his unfitness at the hearing, and nobody challenged her. Similarly, the doctor testified that the defendant couldn't give her – had a lot of trouble giving her a social history. And his inability to give her his social history showed her indirectly that he would be unable to tell the story of the case to his counsel. But her report, again, contains a social history. And so she apparently got it from the defendant. And there are details that obviously came from the defendant, such as the defendant using copious amounts of ibuprofen and disagreeing with previous diagnoses. Obviously, that's stuff that he told her. So she – that could have been used to challenge her opinion. And the defendant's pro se filing is probably the biggest one because ultimately what the decision came down to was could the defendant cooperate and communicate with his counsel. But the defendant's pro se filing showed that he could. Well, the defendants – they're not the easiest things to read, but they are coherent and you can glean from them a viable theory of defense that, you know, that he wanted to pursue in this case. You know, and so much so that, you know, that the R01 is able to criticize it and the state is able to criticize it in its brief. So it is communicated. So, again, that's something that could have been used to challenge her opinion. And it's something that was in the record that if the judge, you know, looked beyond what was just presented to the jury, he could have seen. And, you know, if this case were spec, the Supreme Court would be looking at it when deciding whether or not it was appropriate to direct the verdict. So – and so, as I said, the rule that I'm asking for here with respect to the judge is not – it's not coming out of the blue. This is something that the Supreme Court is comfortable doing and has done in every case that's cited in this case. It's also – and it's also essentially what this Court requires of a trial judge in a bench fitness proceeding. And young people – this Court does not allow a trial judge to simply accept an expert's finding that a defendant is fit or unfit. You know, this Court requires him to look beyond that and use his own observations of the defendant and reach his own conclusion. So – and then what this – what that would do is it prevents sham hearings like the one here where nobody – nobody – you know, the party given the burden of proof doesn't make any effort to meet that burden. And then the other party dismisses the – directs the verdict because the party that didn't try didn't succeed. You know, he – obviously, he at one point requested an attorney or had one appointed for him. But he didn't like what his attorney was doing and seemed to be putting up a struggle against his attorney. Where – how do we look at that? I mean, I don't know many people who, when their attorney says, look, I've got this option for you. You can go to jail for five years or you can go to trial and maybe you'll get 20. I mean, five looks better than 20, but it's still jail. So, I mean, what are we supposed to look at here with reference to his conduct with his counsel? Well, remember that you are not making the decision if he's fit or unfit. It's a question of should the jury – should the judge have directed the jury's verdict? Or should it just be made it to the jury? With respect to this defendant and his counsel, this was, again, something – let me step back. The mere fact that a defendant disagrees with his counsel clearly does not make him fit, unfit. And that would be a real problem if we were to hold otherwise. This – what you can look at, though, is what – is he – is he coherent? Is he – is his disagreement a result of some sort of strategic thinking? And in this case, the defendant was. His disagreement with counsel was over a motion to suppress statements. The defendant's position was that he didn't make the statement that the counsel was trying to suppress. And, in fact, he had made a different statement that was exculpatory. And even cited a witness who he thinks would testify that he, in fact, made the exculpatory statement, not the inculpatory statement. So counsel wanted to pursue the strategy of suppressing the statement. The defendant wanted to pursue the strategy of letting the statement end and using his witness to rebut it. That's – that's not – that's not an unfit defendant. That's – that's – you know, he's thinking strategically, trying to – trying to further his cause. But when he tries to do that, he, instead of writing letters to the judge and he stops because he's told you shouldn't do that anymore, he now files pro se documents and he has an attorney. And – and unfortunately, in those pro se documents, he talks about the offense. That creates a pretty big danger. To let him testify creates a danger that he would seriously incriminate himself even if told you really shouldn't do that. But that is his right. It is his right to testify. He shouldn't be – he obviously shouldn't be filing pro se documents. But, again, filing pro se documents does not make a person unfit. So, you know, I think obviously, you know, he's a difficult client. I think that's – that much is clear. The question is, you know, was he so unfit that he couldn't even get a jury to – to make that determination? And that, I think, from this record, is not so clear. In fact, I would say the record shows the opposite. And finally, I would just briefly address the other issue because it's basically the same problem, different solution. In People v. Holt, obviously the Supreme Court held that defense counsel is not ethically obligated to argue the defendant's position on fitness. But the Supreme Court did expressly limit its holding to cases in which the record clearly established the defense unfitness. And, again, that's the record clearly establishing it, not just what was – what was shown to the jury. In the second draw, I'm really asking this court to do is to make that express limitation operative and hold it in a case where the record does not clearly establish that the defendant is unfit, that defense counsel then still has an obligation to – to advocate for her client's position and not for the position that she feels is correct. So, essentially, you're saying that defense counsel should not make – or respondent's counsel should not make a motion for directive finding? Correct. Unless the record – the record clearly establishes, as, you know, in this limitation that the Supreme Court put on his holding. And unless Your Honors have any further questions, I would ask that you reverse the finding of unfitness. Thank you. Thank you. Ms. Whitson. May it please the Court. Good morning, Counsel. Your Honors, we see this as a simple question of sufficiency of the evidence in the sense of Hedrick being the ruling – the controlling precedent for the first issue and Holt and Strickland being the controlling precedent for the second issue. Because what's really coming – what it's coming down to here, and Counsel even argued this morning, one of the last things he said about the first issue is that we don't think the evidence here is sufficient to go under the controlling precedent, you know, which would allow under Hedrick just to go by that standard. And so it comes down to a factual dispute, really, between, you know, whether it's enough – whether the facts are sufficient enough to meet the Hedrick standard, which is a standard which says that the – it's only – the directed verdict is only granted when the move-on – excuse me, when the non-movement, which in this case would be the State trying to prove that the defendant is fit. So overwhelm – I'm sorry. When the evidence viewed in the light most favorable to the State, which would be about fitness, so overwhelmingly favors the move-on to be about unfitness that no contrary verdict based on that evidence could stand. Hedrick sets the standard, and by that standard, it takes into account exactly what the defendant is arguing here, which is if the evidence isn't clear and, in fact, overwhelming under Hedrick, then the State – or, excuse me, the court may not properly direct the verdict. So Hedrick controls here to allow, in this type of case, to say that there has to be something more, that we have to look beyond what the State presents because the State is saying that, you know, in this case, the State has presented an expert who takes the position that defendant is, in fact, unfit, that we have to look beyond that and determine, was there any other evidence out here that the State either suppressed or the State just didn't – wasn't moved to bring? That sets a standard that can't be really applied in any case because, first of all, we have to determine that that only applies when the evidence is not clear. Again, we get back to a factually dependent determination. That is what is – and that is not a public interest exception to the mootness question. So in this case, it isn't a public interest exception. This is saying, in this case, the argument by defendant is that the evidence is not so overwhelming that this directed verdict should have been given. That's a simple – under the standard of pederasty, that's a simple review by this court to determine whether, in fact, that evidence is there. There is no need for any new policy to be drawn up in terms of some type of subjective standard of, this, you know, is enough and this is not enough. In terms of this particular hearing, there's nothing, absolutely nothing, to show that the prosecution had some facts available that it was not interested in bringing. This idea that there's no interest of the state to actually provide evidence that would show the defendant is fit is simply not worn out by the record. Where is there showing that there is some reason to believe that? What we have is the state is charged with the burden to prove that a defendant is fit. We presume that our attorneys act effectively unless there is something on the record to show that they have not. Obviously, that's the standard under Strickland for the defense attorney, too. We also presume that the court knew what it was doing and applied the law. Those are presumptions. Those presumptions have not been rebutted here. What we have is the state not – or trying to, first of all, the state is trying to prove that the defendant is fit and there's a good reason for why the state would want to do that. The state doesn't want stale evidence. The state wants to move forward with the prosecution. But in some cases, as in here, an expert is hired and that expert comes back saying this person is unfit. Now, what we have is not only that, but we have defense counsel who is one of the three objective people in court who can raise a bona fide issue of the defendant's fitness, and defense counsel did. He sees it that way. He also sees it as that the evidence is clear that this defendant is unfit, and so therefore need not under Holt take a position that his client wishes him to take. And there's a good reason for that. In any fitness, of course, we are looking at a paramount interest of making sure we don't send an unfit defendant to have to stand in court and be prosecuted. That's a concern across the board, whether it's for the court, the defense counsel, or the state's attorney. And with that in mind, once a bona fide issue has been raised, the defendant's own wishes are secondary because the defendant could be unfit. So we rely on our officers of the court who are the attorneys that are there to bring forward the evidence that they have. There's no showing here that they didn't do that. And, in fact, let me go through some of the facts, which counsel has brought up today, in terms of why they claim that this is a sham. First off, one of the points is that Dr. Aran apparently said that he was charged first one way and then another. Well, whether she had it right, whether she had it wrong, whether she just didn't understand the nuances here of how this was charged doesn't matter because she didn't find him unfit on the basis that he didn't understand the nature or the purpose of the proceedings. She found him only unfit in his inability to assist with his own defense. So she came to the conclusion that he did understand the nature and purpose of the proceedings. Secondly, as far as the prosecutor informing the judge that he might not be able to meet the burden, there's nothing wrong with that. You know, he's got one expert witness. The expert comes in. He's read the report. He knows what it says. He knows what questions he can ask, and he also knows his own observations in court. He's telling the court, and certainly it's not something that, you know, he's promising or something, but he's telling the court that he may not be able to meet it. That's a fair statement of what he anticipates. Nothing more. Defense counsel also anticipated that that might be true. And, you know, there's nothing wrong under Holt. That's, in fact, a very similar factual situation, only in there they actually had opening statements, and both sides told the jurors that there might not be able to be proof, that the state might not be able to carry its burden of proof to show that the defendant there was fit. Waudeer counsel has suggested that it shows that they had no interest by the mere fact that they didn't ask their own questions, but the court had asked or shown them the day before the Waudeer started, shown the questions that it proposed to be proper for the purpose of this fitness hearing to get at any prejudice, to get at any bias, and both sides believe that those questions were sufficient. After all, we are looking at a fitness hearing. The issues are a little more limited, you know, very much so than a trial, and there's no suggestion by counsel as to what additional questions could have or should have been asked. In terms of the state doing more to undermine the psychologist, Dr. Arand, the state was looking for a fair hearing. The state did ask questions, questions that went to the underlying or the underpinnings of her opinion. Also asked whether the defendant was cooperative, and she said he was. Asked whether he showed up. She didn't remember that. Asked whether he was able to actually, you know, communicate with her, and she said he was, but he wasn't able to give answers that allowed for an understanding, really, of where he was going with this, and even what she did get in terms of the personal history and other questions took her much longer than normal, and at the end of that, the defendant himself says, I need to, you know, hear what she says now because she was unfair to me, she tried to limit what I said, and I ended up giving inaccurate answers. Therein, it shows exactly what the problem was. He was not able to be, even with redirection by a psychologist, somebody who knew what she was doing, he was not able to come back and give an answer that, with extra time given, that actually answered it in a way that he even thought was accurate. So what we have here is, you know, defense, excuse me, defendant was able to come up with some suggestions of witnesses and that type thing, but do we know, really, whether if he's unfit and whether his mind is rambling, he's in part of his bipolar syndrome with psychotic features, if that's all going on, then what we can look at is, he was able to give this person and that person as witnesses. Well, perhaps they're not witnesses that really could help him in any way, and if we don't have a person of sound mind giving help, then what type of help is that? That's not really assisting in your defense if you're not of sound mind, such that you're able to really recognize what occurred and give some help to your counsel. Why is it that he thought his attorney was actually a police detective? Yes, that's just one instance of many that the court observed, too, as well as both attorneys. The defendant talked to his attorney, and he had two attorneys. This is the female attorney who told him that she had investigated some of this, and he took that to mean that she was acting as a detective and she didn't know her role in this case. He also suggests, and this is in the report and in what Dr. Arad says, that he believed everyone was against him, and that started with people who weren't related to this case, his prior girlfriends, all of whom he believed had set him up to be the father of children who were actually a father by someone else, to the prior psychologist he had seen, who he said was lying, to his attorney, who he thought was a detective or was pretending to be a detective or believed she was a detective, to court personnel, the police, his neighbor's wife, his prior, excuse me, and his own attorney lying about his case. The police were, according to defendant, had actually edited and doctored the videotape of the incident. These types of indications show both the attorneys and the court, as well as the only particular expert that they all agreed should be called. All of that came back with evidence only showing that defendant or only concluding that defendant was unfit, not fit. So in that case, it's clear that this really does fall within Patrick, and Patrick would say that the directed verdict is proper. And this is fact in the Brown cases, you know, both have come from the Supreme Court, have used a directed verdict in these circumstances, and we believe that those cases are the controlling precedent for the first issue. As for the second issue, again, much of this is just repetitive, so I won't get into it too much, but it gets to defense counsel's duty to his client. Holt controls that, and Holt says that you need not be an advocate for the position that your client wants. If the evidence is clear that, you know, under due process, you know, you have to consider that, too, and that's of paramount importance, of course, that your client not be tried when unfit, that if there's clear indication that he is unfit, you need not advocate for his position. Now, Hattery and Cromack do not apply, and Holt says that very clearly. They do not apply because there's different considerations there. The idea is both sides take a position, you know, and the defense would, of course, be that he's not guilty. They don't have the added, and that's what brings us to the truth, and that's what the preeminent consideration always is, is the idea that both sides advocating vigorously will lead us to a position where we will most likely find the innocent to be innocent and the guilty to be guilty, but that is not the case here. Here we do not know if what the defendant wants, which is to be found fit here, is actually in his best interest, is actually something that, if he were fit, he would want to be advocated. So there is no real set, this is what every defendant wants in this case. Instead, we look to the overall purposes and say, if the evidence is clear, as it was here, then under Holt, you can advocate against your client's interests. Is there a reason that counsel maybe should have asked for an independent evaluation, which is often frowned upon because of money issues, but should he have asked for that after the Auranda report came in? Well, I don't think that he believed, you know, the defense attorney, given that he raised the bona fide issue and given what was going on in court, and then all of the types of things that were said that basically, you know, verified that from Dr. Auranda, that he believed that it would even be helpful to his client, much less that it would be a successful motion. The safety net here for the defendant, of course, as to his client advocating or not advocating his position, is that, again, you know, if it's not clear, this court can still find, and then Holt would not apply. Holt says, you know, it's proper here, meaning it's not proper if the evidence is not clear. And under that situation, Holt, again, would apply to provide that safety net, and in fact, the Strickland standard would also apply. Because if you don't advocate for fitness when, in fact, there is evidence of fitness, then under Strickland, you would be found to be ineffective too. So the safety net is there in both of these instances, both for the court and for in terms of whether or not your attorney advocates for you, and there's no reason to go beyond that. We would ask this court to find these issues moot as factually dependent, not likely to recur, and in no need of any type of guidance from this court. Thank you. Thank you. Mr. Hamill. Mr. Hamill, I have a question. Sure. Why doesn't Pedrick control? Pedrick doesn't control because Pedrick is based on the assumption that the party that bears the burden of proof, it has an interest in meeting that burden. And so that any time a party does not present sufficient evidence to meet the burden of proof, the judge can assume that that failure was because there was no evidence to present. In this case, and in many cases, the state has the burden of proof, but the assistant state attorney is not under any ethical obligation to meet that burden. And why not? Because if the prosecutor believes that the defendant is unfair, then he would be advocating for, in his mind, a due process violation. It would be the same situation as in Holt. I see. And there's a, I mean, you know, just because the defense counsel thinks that a defendant is unfit, does not mean that the state's attorney is going to disagree with them and think that he's fit. That's why this is different from every other instance in which a directed verdict is appropriate. And this case illustrates why that can be a big problem, because in this case there was evidence that could have been used, as I went through in my first argument, and that counsel ignored. Well, the defendant wanted to testify. That seems to be the issue. And some of the things you advocated for are possible things in the record that would certainly, should have been considered, would not necessarily have involved his testimony. It could have just been a finding in open court that these things had occurred and the court was taking them into account. How does that solve the testimony problem? Both of my, both of the rules that I'm advocating here are imperfect solutions. But the second one would actually address that. If counsel is obligated to advocate for the defendant's position, then you can put it on counsel that she would have to bring these things up. Obviously, if defense counsel doesn't want to provide any evidence, then all the defendant is left with is his own testimony. That's really the one aspect of this case that you can control. So this is an imperfect solution. And the problem is, if you want to look at it from above, the real problem here is that this is an adversarial process that's shoehorned into a non-adversarial inquiry. You just don't have the two sides battling against each other and tugging against each other and finding the truth in the middle. It just isn't there. So we have a lot of these imperfect solutions. And there is nothing this court can do to solve the bigger problem because you're not the legislature. But what you can do is you can take the Supreme Court's language from Brown and Speck, saying the directive verdict is appropriate in a proper case, and you can interpret that as a case like Brown and Speck, where the court had a full record. In fact, both Brown and Speck defendants were found fit, which means that there were trials before the issue got to the Supreme Court. So they were able to look at the whole record. Even the defendant in Brown, I think the defendant testified. So they had a lot more than the general judge had based on the general judge's file in Pedrick. All he has is that testimony that was in that 13, I think it was 23, that I counted while I was sitting down, 23 page here. So what I'm asking for this court to do is basically take that safety net that Brown and Speck had and apply it to the trial judge. Isn't there somewhere in this record the actual texts that were sent that could be looked at? Yes. And counsel saw those in discovery, I'm assuming, or even from his own client, defense counsel. Yes. And they, I mean, we're talking about a lawnmower and we're talking about killing somebody. That's, I mean, as a matter of law, you don't usually kill somebody to protect your lawnmower. True. And that would seem to indicate that there isn't a clear understanding of what this issue is about. Well, the defendant, I mean, the text is the basis of the charge. The defendant's defense that is coherently presented in his pro se filings is that when he said, I will kill you, he meant it figuratively in the same sense, and he gave an example, actually, of one time his friend had a sports car and he said, if I crash this, my sister's sports car, my sister will kill me, which obviously did not mean his sister would literally kill him. And the defendant's defense, such as it was, was that the victim, the alleged victims in this case, should have or would have reasonably interpreted his text in that sense. Just basically say I'm very mad at you. And that's what it is. I mean, and the viability of that defense, I guess, belongs for another day. But is it a fact? And the fact is, you know, the text were the text. And the defendant and his counsel were going to have to deal with that in trial. But your position is, if the court has any concern, he or she should look at everything that's available at that time. And I'm assuming this was available. The text would have been, I think so. Yeah, I think they were in the defendant's pro se filings, actually. So they were available. Well, what I'm saying is that in this situation, if the court has any doubts, deny the directive verdict. Because all the directive verdict is doing is protecting judicial economy. It's not protecting anybody's rights. It's not making the proceeding more accurate. So deny the directive verdict. Let it go to a jury. And then the defendant's rights are vindicated, and you live with the verdict. And if the defendant incriminates himself even after he is admonished, and if he incriminates himself after being admonished, wouldn't that be an indication that he doesn't understand the function and he's not able to cooperate with the legal aspect? But we still have an admission. If the defendant took the stand and did something like that, I mean, you can't stop him, I guess. And that would be that. I don't think you can direct the verdict to protect the defendant from himself, especially when the defendant is exercising his right to a jury determination of fitness. Well, maybe you should if he's not fit. I mean, we're going around in a circle here. And that's what the purpose of this proceeding is, to try to protect the defendant's rights so that when it comes time for trial, he will have a fair trial, if there's even going to be a trial. So, I mean, it's kind of hard to figure out where that circle ends and goes this way. I think the defendant still has a right. He definitely has a right to the jury determination. And, you know, perhaps a better rule is to let it hold to its holding and say the defense counsel has to do this. And so the defense counsel can do it without perhaps putting the defendant on the stand. But if the defendant has a right to testify, so if he's going to testify, he's going to testify. And I don't think you use a direct verdict to protect him from his right to testify. So unless you're honest. This is not the issue that we faced this morning, but it just now did occur to me. If after the trial is over and the defendant has testified and the judge feels the jury has reached the wrong verdict, can the judge, is your position then that the judge should enter a JNOV? Yes. I think the judge could do that in that situation. Because, you know, the main problem here is that nobody made an attempt to prove that he was fit. And once somebody has made an attempt under Brown and Speck and Holt, then yes, a direct verdict would be appropriate. Isn't having him examined an attempt? No, I mean to prove it in court. To prove it before the jury. All right. Unless there are any further questions, I ask that we reverse the finding of our case. Thank you. Okay. Thank you both for arguing this morning. We'll take the matter under advisement. We will give you a decision in due course, and we are going to take a little longer recess now to get ready for our next hearing. Thank you.